## ALVIN HAMPTON *v.* THE STATE.*

*(Jackson.   April Term, 1923.)*

1. **SEARCHES AND SEIZURES.** Voluntarily showing liquor to officers with search warrant held not to remove constitutional protection against unlawful search.

Where one accused of illegally possessing intoxicating liquor was confronted by officers with a search warrant, and a declaration of the purpose to search the premises if the whisky was not shown, that defendant voluntarily showed the officers the whisky did not place him beyond the guaranty against unlawful search provided in Constitution article 1, section 7; the act being one of necessity, rather than of volition. (*Post, pp.* 158, 159.)

Case cited and approved: United States v. Slusser, 270 Fed., 818.

Constitution cited and construed: Art. 1, sec. 7.

2. **CRIMINAL LAW.** Evidence secured by valid search warrant admissible on charge of violating liquor laws, but otherwise where warrant void.

Evidence secured by an officer in the execution of a valid search warrant is admissible upon a charge of violating the liquor laws, but evidence obtained by search of one's premises without a search warrant or under a void search warrant is not admissible. (*Post, pp.* 159-161.)

Cases cited and approved: Hughes v. State, 145 Tenn., 544; Youman v. Commonwealth, 189 Ky., 152.

3. **SEARCHES AND SEIZURES.** Search warrant must conform to both constitutional and statutory requirements.

A search warrant must conform to the requirements of Constitution article 1, section 7, and also to Shannon's Code, sections 7297-7300, inclusive, relating to the grounds for and the issuance of search warrants. (*Post, p.* 161.)

---

*On constitutional guaranties against unreasonable searches and seizures as applied to search for or seizure of intoxicating liquor see notes in 3 A. L. R., 1514, and 13 A. L. R., 1316.

Hampton v. State.

Cases cited and approved: Purkey v. Maby, 33 Idaho, 281; U. S. v. Borkowski, 268 Fed., 408; State v. Peterson, 27 Wyo., 185.

Code cited and construed: Secs. 7297-7300 (S.).

Constitution cited and construed:    Art. 1, sec. 7.

4. **SEARCHES AND SEIZURES.**  Search warrant must tell offier where and for what search is to be made.

A search warrant must tell the officer what to search for, as well as where to search.  (*Post, p.* 162.)

5. **INTOXICATING LIQUORS.**  General description held sufficient in warrant authorizing search for intoxicating liquors.

Where liquor is the object of search, a general description "intoxicating liquors" is a sufficient description of the thing for which earch is to be made.  (*Post, p.* 162.)

Case cited and approved: State v. Peterson, 27 Wyo., 185.

6. **INTOXICATING LIQUORS.**  Search warrant held insufficiently to describe articles sought to be found.

Where an affidavit for a warrant authorizing the search for intoxicating liquor charged defendant with "making, handling, or transporting whisky," and the warrant directed the officers to search defendant's premises for "said articles," the warrant was insufficient.  (*Post, p.* 162.)

7. **INTOXICATING LIQUORS.**  Information presented in affidavit for search warrant not part of warrant.

Information presented to the magistrate in the affidavit for a search warrant to seize intoxicating liquors is not a part of the warrant.  (*Post, pp.* 162, 163.)

Case cited and approved:  Cohn v. State, 120 Tenn., 61; Youman v.
Case cited and distinguished:  Hughes v. State, 145 Tenn., 544.
Commonwealth, 189 Ky., 152.

---

FROM DYER.

---

Hampton v. State.

Appeal from the Circuit Court of Dyer County.—Hon. ROBERT A. ELKINS, Judge.

R. D. CHAMBERS, for appellant.

W. H. SWIGGART, JR., Assistant Attorney-General, for the State.

MR. JUSTICE COOK delivered the opinion of the Court.

Plaintiff in error was convicted of illegally possessing intoxicating liquor, and adjudged to pay a fine of $150 and to serve ninety days in the workhouse. After motion for a new trial, which was overruled, appeal was prayed and granted, and errors are assigned to the action of the trial judge in admitting the testimony of the officers who entered the residence of plaintiff in error and discovered whisky.

The constable who made the search testified that upon information that whisky had been recently transported to Hampton's house he applied to a justice of the peace for a search warrant. That proceeding appears in the record as follows:

"State of Tennessee, Dyer County.

"To the Sheriff or Any Lawful Officer to Execute and Return: Personally appeared before me I. N. Williams an acting justice of the peace for said county H. H. Pitt, who makes oath in due form of law that to the best of his knowledge and belief —— Hampton, who lives on the north end of the E. R. Ditmore farm in Ninth civil district of Dyer county, on Newbern and Yorkville road, is handling, making, or selling whisky unlawfully.

"To Any Lawful Officer: I command you to make im-

mediate search of the premises of said Hampton and if
you find any part of said articles to return same to this
court to be dealt with as the law directs.

"Given under my hand and seal this 10th day of August,
1922.

"I. N. WILLIAMS, J. P.

"Executed by searching Alvin Hampton's house and
found about two gallons of whisky.

"H. H. PITT, C. D. C."

Timely objection was made to the testimony of the of-
ficers upon the ground that the search warrant was void.
The objection was overruled by the trial judge, and Of-
ficer Pitt testified about going to Hampton's house and
telling him they had a search warrant, and he had as well
disclose the location of whisky and avoid the consequences
of a search.    To this suggestion Hampton told them he
had whisky in a closet.    There they found eight quarts of
white whisky.    W. E. Bryant, the other officer, testified
substantially to these facts, and the conviction rests alto-
gether upon this evidence, which plaintiff in error insists
was obtained by illegal means.

The state insists that Hampton placed himself beyond
the guaranty against unlawful search provided in article
1, section 7, of the Constitution, by voluntarily showing
the whisky after the officers told him of their purpose to
search.    As was said in *United States* v. *Slusser* (D. C.
1921), 270 Fed. 818, the security of the individual against
search is not waived by the owner of the premises agree-
ing to a search when confronted by an officer with a search
warrant.    The conduct of Hampton, confronted by the
officers with a warrant and a declaration of the purpose
to search if the whisky was not shown suggests an act of

necessity, rather than volition; hence the contention of the State is not sound.

The illegal possession of intoxicating liquors being a public offense, a search warrant in manner and form authorized by the Constitution and statutes may be issued, conferring authority upon an officer to search the premises of an alleged offender, and evidence secured by the officer in the execution of a valid search warrant is admissible upon a charge of violating the liquor laws.

But evidence obtained by search of one's premises without a search warrant, or under a void search warrant, is not admissible. *Hughes* v. *State,* 145 Tenn., 544, 238 S. W., 588, 20 A. L. R., 639; *Youman* v. *Commonwealth,* 189 Ky. 152, 224 S. W., 860, 13 A. L. R., 1312-1315.

Our institutions conceive the citizen as a human being with rights which are defined by law, and the State as a sovereign, whose power over the citizen is regulated and controlled by law, and law regulates the method whereby the State, through its officers, may enter and search the homes of the people, and use evidence so obtained to penalize them.

It is unnecessary to portray the historical background which produced these laws regulating search and seizure, and which illustrates necessity for their observance; it will be sufficient to recite the provisions of the Constitution and statutes, preceded by the suggestion that observance of law by those whom the State clothes with authority is no less commendable and equally as necessary for the welfare of society as enforcement of the law against the private individual.

To protect not one man's home, but all men's homes,

from unlawful intrusion by public officers it was ordained in article 1, section 7, of the Constitution:

"That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and ought not be granted."

The legislature directing procedure under this constitutional provision enacted the statutes embodied in Shannon's Code as follows:

"7297. No search warrant can be issued but upon probable cause, supported by affidavit naming or describing the person, and particularly describing the property and place to be searched.

"7298. The magistrate shall, before issuing the warrant, examine on oath the complainant and any witness he may produce, and take their affidavits in writing, and cause them to be subscribed by the persons making them.

"7299. The affidavit shall set forth the facts tending to establish the grounds of the application, or probable cause for believing they exist.

"7300. If the magitrate is satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, he shall issue a search warrant, signed by him, to any lawful officer, commanding him forthwith to search the person or place named for the property specified, and to bring it before him."

Thus do our laws prescribe the procedure through which officers may search suspected persons and places, and seize

things. There is no writ more calculated to be abused in its use than the search warrant, for with it any home may be entered and the inmates disturbed, humiliated, and degraded. To prevent such a possibility from false informants made to officers inspired by overzeal, or acting from expediency, or obeying the command uttered by a mob impulse, the provisions of the Constitution and statutes found force and command observance.

The officers acting in this case did so in good faith, but, through carelessness of the justice of the peace, or by oversight, the evidence presented by the affidavit omits some of the essential requirements of the statute, and the warrant omits most of them.

It is uniformly held that the search warrant must conform to both the constitutional and statutory requirements. *Purkey* v. *Maby,* 33 Idaho, 281, 193 Pac. 79; *U. S.* v. *Borkowski* (D. C.), 268 Fed., 408.

The requirements of the Constitution and the statutes we have quoted are not difficult. It would be easy to comply with them, and compliance would result in protecting the innocent from unlawful search, and authorize the use of evidence obtained through lawful search against the guilty.

The requirements are that evidence of the fact committed, or probable cause for believing its existence, shall be presented to the magistrate, reduced to writing, and subscribed by the person who conveys the information. Upon information thus presented the magistrate is required to exercise a judicial discretion, determinative of the sufficiency of the evidence, before he grants the writ. *State* v. *Peterson,* 27 Wyo., 185, 194 Pac., 342, 13 A. L. R., 1284.

Because the Constitution forbids general warrants, the magistrate should see that the place to be searched is sufficiently described to enable him to carry the description in the warrant, so that the warrant may direct the officer where to search, without leaving any discretion to the officer as to what place he may search. This is important so as to exclude search of places not contemplated by the warrant. The warrant must tell the officer what to search for, as well as where to search. 19 Ency. Pl. & Prac., 329.

A general description "intoxicating liquors" where liquor is the object of search would be sufficient description of the thing sought. *State* v. *Peterson,* 27 Wyo., 185, 194 Pac., 342, 13 A. L. R., 1284.

The words of the affidavit, "who lives on the north end of the E. R. Ditmore farm," etc., describes the person "Hampton," but neither the affidavit nor the warrant describe the premises. The affidavit presented a charge against a Hampton of making, handling, or transporting whisky, not of possessing whisky, and the warrant directed the officer to search his premises for something described in the warrant as "said articles." The affidavit did not describe "the thing to be searched for;" but if it had done so the information presented to the magistrate in the affidavit is not a part of the warrant; it is the evidence upon which he must determine whether or not the warrant should be issued.

As we have stated, the law regulates precisely the mode through which officers may enter homes, and search premises, as a means of discovering evidence of crime. By a proceeding violative of the Constitution and the statutes the officers ascertained that plaintiff in error had violated the law, and testified to the facts thus discovered, and upon

their testimony this verdict rests. This presents the question of whether the court, in order that an individual may be found guilty, shall admit evidence obtained by public officers in violation of the Constitution and statutes.

In *Hughes* v. *State,* 145 Tenn., 544, 238 S. W., 588, 20 A. L. R., 639, distinguishing this class of cases from the case of *Cohn* v. *State,* 120 Tenn., 61, 109 S. W., 1149, 17 L. R. A. (N. S.), 451, 15 Am. Cas., 1201, this court, in an able opinion by Special Justice SMITH, followed and approved the reasoning of the cases which held that the State in dealing with the individual should observe its own laws, and "where the action of the governmental authorities is unlawful and violative of the constitutional rights of the citizen, and directly developed and disclosed the facts of the violation of the law, the government cannot rely upon the evidence thus unlawfully obtained by its agents." *Youman* v. *Commonwealth,* 189 Ky., 152, 224 S. W., 860, 13 A. L. R., 1303.

For reasons stated, and upon authorities cited, evidence of the offense discovered by means of the illegal search warrant was not admissible, and should have been excluded.

The judgment of the circuit court is reversed, and the cause remanded.